## EX PARTE HENRY O. ROGERS.

1. FORGERY — INDICTMENT — VARIANCE.— When an indictment for forgery purports to set out the forged instrument according to its tenor, and in *hæc verba,* any variance as to the words of the instrument, unless the variance be mere fault of spelling, is fatal to the indictment.

2. SAME — EVIDENCE.— A distinct variance between the attestation clause of a deed alleged to be forged and the instrument as described *hæc verba* in the indictment, disqualifies it as evidence.

3. SAME — PRACTICE.—Before the State had concluded its evidence, and after the motion of the accused to suppress the alleged forged instrument as evidence, the court permitted the counsel for the State to dismiss the prosecution under the indictment, and held the accused in custody to enable the State's counsel to file a complaint sufficient to charge the accused with the offense attempted to be set out in the indictment. *Held,* that the court did not err.

4. SAME — FORMER JEOPARDY obtains when it appears that the former trial was for an offense identified by the proof with the one on trial, and the usual test is whether the evidence necessary to support the pending prosecution would have supported the former one. See this case, wherein the plea is not well taken.

5. SAME — JURISDICTION.— When it appears that a conspiracy to fabri-

cate titles to lands in this State was entered into in Texas, and that one or more of the overt acts was perpetrated in Texas, the courts of this State have jurisdiction, independent of the act of 1876, to try the case, though it be shown that the actual fabrication was committed in another State by an agent or co-conspirator of the defendant.

6. SAME.— Independent of general principles, the statutes in force prior to the act of 1876 conferred such jurisdiction upon the courts of this State. See the opinion *in extenso* on the subject.

APPEAL from the District Court of Travis. Tried below before the Hon. A. S. WALKER.

The indictment charged the forgery of a deed of conveyance purporting to be the act of one Edward Gritten, transferring to James Leland Hall the legal title of the said Gritten to a certain league of land, situated in Travis county, Texas. The alleged fraudulent deed bore date January 25th, 1849. The indictment was filed in the District Court of Travis county, June 11th, 1878, and charged the forgery to have been committed August 8th, 1878. H. M. Peck was charged in the same indictment with the appellant, as a party to the same offense.

At the January term, 1881, of the Travis county District Court, this appellant was put upon his trial. After the State had introduced a part of its proof, the alleged forged instrument was offered in evidence. Its reception was objected to by the appellant upon the ground that there was a variance in the witness-clause as it appeared on the instrument and as it was set out in the indictment. The indictment described the witness-clause as being in the words: "In presence of John Gardner, Henry Miller," whereas it appeared upon the instrument itself "sealed and delivered in presence of John Gardner, Henry Miller." The court sustained the objection, and upon motion permitted the State's counsel to dismiss the proceedings under the indictment, and ordered the appellant into the custody of the sheriff for an hour or two in

order to enable the State's counsel to present a sufficient complaint to charge the appellant with the forgery of the deed. This being done, and a warrant issuing thereunder, the appellant sued out a writ of *habeas corpus,* claiming upon the hearing that he had been placed in jeopardy by reason of the previous proceedings, and was therefore entitled to his discharge. It was urged also that the evidence, if it showed that the paper was in fact forged, proved that it was forged in the city of Chicago, Ill., prior to the act of 1876 providing for the detection and punishment of forgers of land titles, and that therefore the courts of this State had no jurisdiction over the case. The court refused to discharge the appellant, and he appealed.

The opinion sufficiently indicates the character of the evidence upon the questions involved. Counsel for the appellant filed a motion for a rehearing, and fortified it by a brief and argument of great force and research; but the motion was overruled.

*Bethel Coopwood* and *J. H. Stewart,* for the appellant.

1. Falsely making a deed in another State was not made penal by the plain import of the words of the law of the State in force in 1874, when, it is alleged, the one in question was made, and, there being no express words requiring it, the statute then in force will never be interpreted to embrace forgery committed beyond the territorial limits of the State; the power to define and punish such offenses, committed within its limits, being reserved to each State respectively; and a want of territorial jurisdiction is fatal at any stage of the cause. The legislative construction is that the law as it was aforetime did not embrace extra-territorial acts. Pas. Dig. art. 1605–1611; *Rogers* v. *State,* 8 Texas Ct. App. 400; 1 Bish. Cr. L. 80–189; U. S. Const. X Amendment; *Collens* v. *State,* 6 Texas Ct. App. 647; Revised Penal Code, art. 454; *People*

v. *Tyler*, 7 Mich. 222; *Com.* v. *Green*, 17 Mass. 540; *Adams* v. *People*, 1 Comst. (N. Y.) 179; *Graham* v. *Mansergh*, 22 Vt. 54; *Bromley* v. *People*, 7 Mich. 447.

2. "The act, to be criminal, must be alleged to be an offense against the sovereignty of the government.   This is the very essence of crime punishable by human law." *State* v. *Carter*, 3 Dutcher (N. J.), 499.

3. The constitutional requisite that it be "against the peace and dignity of the State" is descriptive of the circumstances under which it is punishable, and no one can be held liable unless he comes within all the particulars of the offense described.   Const. of Texas, art. 5, sec. 12; *People* v. *Tayler*, 7 Mich. 210.

4. The Legislature of a State "cannot provide for the punishment as crimes of acts committed beyond the State boundary, because such acts, if offenses at all, must be offenses against the sovereignty within whose limits they have been done."   Cooley's Const. Lim. (4th ed.) 155.

5. If the forgery was committed in the State of Illinois the *corpus delicti* is there, and there the forgers are punishable, or nowhere; and it is immaterial that the lands intended to be conveyed by the forged deed were not situate within the State.   *People* v. *Flanders*, 18 Johns. 166.

6. "To forge is metaphorically taken from the smith, who beateth upon his anvil, and forgeth what fashion or shape he will" (3 Inst. 169); and where the blow is struck,— the instrument falsely made,— the fact constituting the offense committed,— there is the *corpus delicti*, and the fact is "against the peace and dignity" of the sovereignty having legislative and judicial jurisdiction over that place.   Indeed it is difficult to see how a fact committed in another State can be brought within the meaning of any plain and intelligible words of our Code, or claimed to be "against the peace and dignity of this State."

7. Defining and affixing a penalty for conspiracy,

entered into in this State, to commit an offense beyond its limits, without defining or making penal any fact committed beyond its territorial limits, excludes the right to punish the latter in this State.  Pas. Dig. art. 2453.

8. Forgery, as defined by the Code in 1874, was a substantive act, and only those who made some part or the whole of the false instrument, or participated in the unlawful act of making it, were guilty of the offense; and so the Legislature, by the act of 1876, seems to have construed the law as it was aforetime.  *Expressio unius est exclusio alterius.*

9. It is now well settled by authority and in reason "that where a party is once placed upon his trial for a public offense, involving life or liberty, with a competent jury duly impaneled, sworn and charged with the case, he has then reached and is placed in jeopardy, from a repetition of which, upon the same indictment, or any other for the same offense, the constitutional shield forever protects him; and after the jeopardy has once so attached a discharge of the jury, without the consent of the defendant, before they have rendered a verdict, is equivalent to a verdict of acquittal;" and the case at bar not coming within any of the exceptions to, but being fully and completely embraced by, this general rule, the appellant was, in law, acquitted of the charge against him by the proceedings had upon the indictment.  *Vestal* v. *State*, 3 Texas Ct. App. 652; *Parchman* v. *State*, 2 Texas Ct. App. 238; *U. S.* v. *Shoemaker*, 2 McLean, 114; Bish. Cr. L. 856; *The Com.* v. *Tuck*, 20 Pick. 364; *Newsom* v. *State*, 2 Kelly, 60; *Reynolds* v. *State*, 3 Kelly, 53; *State* v. *Redmond*, 17 Iowa, 333; *State* v. *Walker*, 26 Indiana, 352; *Klock* v. *The People*, 2 Parker, 685; *Lee* v. *State*, 26 Ark. 262; *O'Brian* v. *The Com.* 9 Bush (Ky.), 333.

10. If the decision of the court excluding the evidence upon the trial was right, it was simply a misapprehension of the rules of evidence by the prosecution, and the re-

sult was the want of a proper preparation for trial, and this without fault on part of the accused, and that the ruling of the court was erroneous does not alter the principle; nor can the State, upon an adverse decision, arrest the trial with a view to a more favorable decision at another term. *Klock* v. *The People*, 2 Parker, 658 (N. Y. Cr. C.).

11. The indictment and complaint charge the same identical act, so combined and charged as to constitute the same legal offense or crime; and if there is diversity of circumstances not necessary ingredients in the crime, still the offenses are to be regarded as the same. *The Com.* v. *Cunningham*, 13 Mass. 245.

12. The charge was forging a deed which was a complete instrument, without the clause introducing and purporting to be the act of the subscribing witnesses; such clause formed no part of the deed, and, not being alleged to be forged, may or may not be the act of the persons whose names were subscribed to it. It constitutes no material variance, though not set forth in the indictment. *Miller* v. *The People*, 52 N. Y. 305; *Hess* v. *State*, 5 Ohio, 9; *The Com.* v. *Ward*, 2 Mass. 397.

13. It is not the signature of the witness, but the signing, sealing and delivery by the grantor, that constitutes the instrument a deed. Wharton's Am. Cr. L. 598; *State* v. *Ballard*, 2 Murphy, 186; *Menley* v. *Zeigler*, 23 Texas, 93.

14. The legal identity of the two offenses is to be found in the answer to this question: Could the prisoner, upon any evidence that might have been produced, have been convicted upon the first indictment of the offense that is charged in the second? *The Com.* v. *Bakeman*, 105 Mass. 59; *Parchman* v. *State*, 2 Texas Ct. App. 240.

15. Appellant being held upon a complaint, and not indicted, this court must hear and determine the cause upon the law and the facts arising upon the record, and thereupon do substantial justice to the appellant. Revised Code Crim. Proc. arts. 884 and 174.

*Horace Chilton*, Assistant Attorney General, and *H. M. Holmes*, for the State.

WHITE, P. J.  By bill of indictment, presented in the District Court of Travis county, on the 11th day of June, 1878, the appellant and one H. M. Peck were charged with the forgery of a certain instrument in writing, purporting to be the deed of one Edward Gritten, executed on the 25th day of January, 1849, and to convey to one James Leland Hall, by bargain and sale, the title of the said Edward Gritten, in and to a certain league and labor of land situated in Travis county, Texas.  The indictment purports to set out the forged instrument according to its tenor and in *hæc verba*, and not simply according to its purport; the instrument concluding with the signature of "Edward Gritten, [seal]" on the right hand side of the page, and the words "In the presence of John Gardner, Henry Miller," on the left.

The case against this appellant being called in the District Court on the 5th day of March, 1881, he withdrew a motion previously submitted to set aside the indictment, and presented his motion to quash, which, upon hearing, was overruled by the court, the appellant reserving exception, and the case was set for final trial on the following 14th day of the same month.  When the case was called on the said 14th day of March, the appellant being in court in person and by attorney, a jury was legally impaneled and sworn, and the indictment read; to which the appellant declined to plead, whereupon the court entered the plea of "not guilty" for him, and ordered the trial to proceed, and the appellant excepted.  After having introduced, in part, the testimony on behalf of the State, the county attorney offered in evidence the instrument alleged to have been forged, and upon which the prosecution was based.  The appellant objected to its reception as evidence, upon the ground that upon its face

it disclosed a fatal variance with the instrument as set out in the indictment, in this, that in the instrument as described in the indictment the words "In presence of John Gardner, Henry Miller" appeared, whereas in the instrument offered in evidence the words "*sealed and delivered* in presence of John Gardner, Henry Miller" appeared. The court sustained the objection, and held the proffered instrument inadmissible as evidence. Thereupon the county attorney filed his motion, asking permission to dismiss the case, and that the appellant be held for a reasonable time in order to enable him to file a complaint charging the appellant with the same offense. The motion was granted, and time allowed; to which action of the court, and the withdrawal of the case from the jury, the appellant excepted.

On the same day the county attorney filed a complaint against the appellant, charging him with the same offense, upon which a warrant issued, and the appellant was held. Appellant sued out a writ of *habeas corpus* on the same day, upon the hearing of which he was remanded to the custody of the sheriff in default of bail. From this judgment he prosecutes this appeal, claiming that he should have been released, (1), because he had once been put in jeopardy under the same identical charge, and, (2), because, admitting even that the instrument was a forgery, the evidence showed that the forgery was perpetrated in Chicago, Ill., and not in Texas, and was therefore not an offense cognizable in the courts of this State.

The proper adjudication of this appeal involves the consideration of the following questions:

1. The indictment purporting to set out the instrument alleged to have been forged, according to its tenor, and in *hæc verba*, was the variance in the instrument tendered in evidence fatal? And if so, would the proof, insufficient to sustain the two prosecutions, render a second trial for

the same offense the subjection of the appellant for a second time to jeopardy?

2. Have the courts of this State, under the laws in force upon the subject prior to the act of 1876, jurisdiction to try parties accused of the forgery of titles to lands in this State, when the forged instrument itself was actually executed in another State?

Responding to the first proposition stated, it must be said that Mr. Wharton in his work on Criminal Evidence lays down the rule which obtains in criminal pleading in this State, that "when an indictment undertakes to set forth, as in forgery or libel, a document according to its tenor, * * * then, any variance as to the words of the document, unless such variance be mere fault of spelling, is fatal." (Sec. 114, and authorities cited.) The conclusion of the charging part of the indictment in this case, which immediately precedes the copy of the instrument as set out, is in these words: "The said false instrument of writing being in words and figures as follows, to wit:"

Whether or not an indictment that merely sets out the purport of the instrument would, in this State, suffice to charge the accused and put him on his defense, is a question that calls for no opinion in this case. Certain it is, that, if such an indictment were sufficient to charge forgery, and this indictment were such an one, no question of the admissibility of the instrument as evidence could be indulged, because of an apparent variance similar to that under consideration. But when, as in the present instance, the prosecuting attorney adopts, in preference, the authorized and indeed commendable, because safer, practice, of setting out in the body of the indictment the instrument in *hæc verba* — in the words and figures in which the instrument is couched — the very converse of this is the rule, and the variance becomes fatal, not alone because when the pleader has undertaken to set out the instrument according to its "tenor," which

is equivalent to "words and figures as follows," he is bound to the strictest accuracy *(Brown* v. *People,* 1 Hawley Am. Crim. Rep. 228), but because the indictment, in averring that the " words and figures are as follows," has announced a material descriptive allegation that must be proved, and that is *not* sustained by an instrument that is *not* couched in the same and the precise language averred in the indictment; and such instrument is, in our opinion, unquestionably inadmissible because of the variance. The principle, moreover, is as old as criminal jurisprudence itself, that, if the pleader in charging an offense has charged it with unnecessary minuteness or particularity, he is nevertheless required to prove every individual allegation as laid in the indictment. No proof short of the fact that the witness-clause was actually " in presence of John Gardner, Henry Miller," would suffice to meet this imperative requirement in this case, for so the indictment has affirmatively charged it to be. *Warrington* v. *State,* 1 Texas Ct. App. 168.

Admitting for the mere sake of the argument that, as contended by the appellant, the attachment of these names as witnesses to the forged instrument was not in itself a necessary element of the crime of forgery — or at least not material or indispensable to the sufficiency of the indictment — it cannot be eliminated as surplusage, and the instrument be thus qualified as evidence, because, in describing the instrument, the indictment has alleged that the words quoted appear as stated, and their presence becomes simply and absolutely indispensable to the identification of the instrument offered in evidence and that described in the indictment as one and the same; and because further, having avowedly undertaken to set the instrument out according to its tenor, *hæc verba,* or as expressed in terms " in words and figures as follows," the State must prove that just such, and the *identical* words alleged in the indictment were parts of the instru-

ment, and it cannot, without showing a fatal variance, prove a single word more. See also *Commonwealth* v. *Gillespie*, 7 Serg. & R. 469.

Upon a careful consideration of the question, we conclude that the court did not err in excluding the evidence upon the appellant's objection. *Roberts* v. *State*, 2 Texas Ct. App. 4; 32 Ark. 609; 7 Serg. & R. 469.

Applying the doctrine of former jeopardy to the proceedings in this case, it follows as a sequence to the views expressed that that plea cannot avail the appellant. The court below committed no error in permitting the county attorney to dismiss the proceedings under the indictment, and it is a principle of law settled beyond peradventure, that a *nolle pros.* is no bar to a further prosecution, even though entered after conclusion of argument. *Swindel* v. *State*, 32 Texas, 102; *Longley* v. *State*, 43 Texas, 490; *Brill* v. *State*, 1 Texas Ct. App. 152. The plea must show that the former trial was for the same offense. 43 Texas, 347; *Id.* 351; *Quitzow* v. *State*, 1 Texas Ct. App. 47. The proof must identify the two offenses as the same (2 Texas Ct. App. 187; 4 Texas Ct. App. 29; *Id.* 34), the usual test being whether the same evidence necessary to support the second prosecution would have supported the first. *Lowe* v. *State*, 4 Texas Ct. App. 34.

Upon an objection raised and urged by the appellant himself, the court properly excluded from evidence, because of variance, an instrument that was vital to the interests of the State, and permitted the prosecuting attorney, at a stage of the proceedings when unquestionably it had the power, to enter a *nolle pros.* and to present a sufficient complaint to charge the appellant with the forgery of the instrument for which he was being prosecuted. In no sense do the complaint and indictment charge offenses identical. The descriptive averments respectively disclose different documents. Unless the evi-

dence that must be invoked to sustain a prosecution under the complaint is such as would have supported the prosecution under the indictment, the plea must be held futile.    That the evidence essential to support the prosecutions in the two cases is not identical — that it is not of equal force or conclusiveness, nor tends to the same effect, is susceptible of easy demonstration.    The preliminary evidence, the oral testimony relating to the transactions participated in by the appellant in connection with other parties to the forgery, before the actual execution of the forged instrument, would, doubtless, on both trials have been the same, and yet that evidence alone would have been ineffectual to sustain either prosecution.

The evidence vital and indispensable to the prosecution in this case was the forged instrument itself, and it cannot be pretended, upon any color of reason, that the instrument as set out and described in the indictment could have been sustained and a conviction supported by the instrument itself, however sufficient it may have been to sustain a conviction under the subsequent complaint. The evidence necessary to sustain the second prosecution is not of such character as would have sufficed to sustain a conviction under the first.    From the view that we take of this case, it is not necessary for us to decide whether or not a verdict of the jury is essential to the sufficiency of a plea of former jeopardy, as seems to be contemplated by the Revised Statutes (Code Crim. Proc. art. 20), or whether the rule is as laid down in Vestal's case, 3 Texas Ct. App. 648; or further, whether or not the Legislature had the right and power to construe the term "former jeopardy."

In the case of *Pitner* v. *State*, 44 Texas, 578, Chief Justice Roberts, speaking for the court, held that on *habeas corpus* the accused cannot interpose the plea of *autrefois acquit*,— and that he could only have its benefit by special plea entered in the court in which the indict-

ment is pending. (See that case and authorities cited.) While we do not feel called upon to decide whether or not the same rule applies to a plea of former jeopardy, we feel authorized in saying that the pleas have many characteristics in common, and much of the same reasoning is applicable and strong in support of both. (See also *Perry* v. *State*, 41 Texas, 488, in which the subject is somewhat more elaborately discussed by the present chief justice.) The plea of former jeopardy is not well taken.

It remains for us to consider whether or not the courts of this State have jurisdiction, under the laws in force prior to the act of 1876, to try parties for the forgery of titles to Texas lands, when the evidence shows that the forged instrument was executed in another State.

That the evidence discloses beyond question that the actual execution of the instrument alleged to be forged took place in Chicago, Ill., is not disputed. This fact being shown affirmatively, the appellant contends that the forgery was not an offense against the laws of this State, but of Illinois, and therefore is not cognizable in this State.

Without undertaking to give even a substantial synopsis of the facts testified by the witnesses on the stand, it is sufficient to say that with certainty enough to show a strong probability of the complicity of the appellant in the steps preliminary to the execution of the forged instrument in Chicago, it was testified that the conspiracy to manufacture the bogus title to the Gritten league of land in Travis county, was entered into in the city of Austin, and this appellant was a party to it; that appellant furnished from Austin the *fac simile* of the signature of Gritten, the certificate of John P. Kale, county clerk of Polk county, subsequently used in the execution of the forged instrument, and certain bogus seals; and that the instrument was forged *for* and at the request *of* the appellant, was returned to appellant at Austin, and

by him, acting through his partner in this transaction, was placed on record in Travis county.

These facts being shown by the State, the question for our solution is this: Was the offense charged in the indictment complete in the State of Texas, when the agent completed the performance of his part of the conspiracy in Illinois, in pursuance of the common design, originated and entered into in Travis county, Texas, to forge the deed of conveyance in question? If this proposition can be answered in the negative, then the plea to the jurisdiction of the Texas tribunal must prevail; otherwise it is of no force.

The case of *The Commonwealth* v. *Harvey*, 8 Am. Jurist, 69, is one in which the defendant, a resident of New York, forged a draft in Albany and placed it in the hands of a broker there to be forwarded to Boston, Mass., where it was paid and the proceeds remitted to the defendant, who did not, during these transactions, leave the State of New York. He was indicted in the State of Massachusetts for the utterance in that State of the forged draft, and though he was shown to have committed the offense through an agent, the broker, who likewise resided in Albany, and outside the State of Massachusetts, he was held amenable in the latter State, was tried, over an objection to the jurisdiction of Massachusetts courts, was convicted, and the conviction sustained. As relied upon by the prosecution in the case of *The People* v. *Adams*, 3 Denio, 190, the adjudication in Harvey's case was assailed vigorously by counsel for the defense as enunciating a principle alike dangerous and unwarranted, and establishing a precedent whereunder a defendant might be held liable to two different jurisdictions for the same offense. But, though insisted upon with consummate zeal and ability by counsel, the court, in the Adams case, in which the issue decided was that the personal presence at the place where the crime was

committed was not essential to constitute the offender a principal, did not concur with counsel, or hold that the adjudication in the Harvey case was obnoxious to the weight of authority; and the doctrine enunciated in Harvey's case, as applied to the Adams case, prevailed.

It would be difficult indeed to imagine a case which, in its prominent features, could be more directly in point than the Massachusetts case referred to. In that case the common law principle *qui facit per alium facit per se*, which is of universal application both in criminal and civil cases (3 Conn. 8), was recognized, and the court maintained jurisdiction over the offense though the paper was forged outside the limits of the State, and was uttered from the place where forged and through the instrumentality of an agent who likewise lived where the paper was forged. The issue in that case was the utterance of a forgery in Boston. It was uttered from Albany, New York, through the medium of an innocent agent, and the defendant was held guilty in Massachusetts. Its criminal intent was to affect the laws of Massachusetts. The issue in this case is the forgery of an instrument designed to affect the laws of this State. Like the utterance in Harvey's case, it was forged from abroad — from Chicago — through the instrumentality of an agent or co-conspirator; the State in this instance resting its position upon the stronger ground that it was likewise forged in pursuance of a previous conspiracy between the agent and the defendant, entered into in this State, to do a criminal act, to be consummated here, and which in its results was to affect a vicious purpose in this State only.

*The Commonwealth* v. *Gillespie* is a strong case in point, and thoroughly sustains the doctrine announced in Harvey's case. See 7 Serg. & R. 469. This was a prosecution sustained in a Pennsylvania court against a citizen of New York, for selling lottery tickets in Philadelphia through an agent. In asserting the jurisdiction of the

Pennsylvania court, the learned judge who delivered the opinion pertinently remarked: "For the law would be a dead letter — we would become the laughing stock of our sister States, either for the inaccuracy and little foresight of our law-makers, or for the imbecility of those employed in their administration,— if such a procedure as this was not brought within the law; if our neighbors from New York or Baltimore could levy a revenue in this State by the employment of a child or slave." * * * "It must be recollected, the conspiracy is a matter of inference, deducible from the acts of the parties accused, done in pursuance of an apparent criminal purpose, in common between them, and which rarely are confined to one place; and if the parties are linked in one community of design and of interest, there can be no good reason why both may not be tried where an overt act is committed."

Conspiracy in this case is not a matter of inference, but a matter of direct testimony.    Of the overt acts leading up to the consummation of the criminal enterprise, the procuration by the defendant of the *fac simile* of the forged signature was one, of the certificate of authentication was another, of the spurious seals was another, the furnishing of the same to the agent or co-conspirator was another; and when the agent, by the act of forgery at the request of and for the use and benefit of the defendant, committed his part of the criminal design in Chicago, and forwarded the instrument to the defendant in Texas, the offense, in our opinion, was complete in Texas, and strengthened when the defendant received the same and had it put upon record.

In *Com.* v. *Corlies*, the question is elaborately argued, and the principle we have stated is supported.    See 3 Brewster (Pa.), 575, citing 4 Wend. 229; Archb. Cr. Pr. 6; *Com.* v. *Tack*, 1 Brewster, 511; *The King* v. *Brissac*, 4 East, 174, citing *The King* v. *Bowes, Id.*    See also *The*

*King* v. *Johnson,* 6 East, 583; 7 *Id.* 65; *Rex* v. *Munton,* 1 Esp. 42; *Barkhampsted* v. *Parsons,* 3 Conn. 8; *U. S.* v. *Davis,* 2 Sum. 485; 21 Wend. 528 to 541.

The last subdivision of chapter 5 (Book 2, p. 104), secs. 104 *et seq.,* Bishop's Crim. Law (4th ed.), demonstrating the correctness of the principles upon which the question is decided in this opinion, presents more forcibly than we can hope or expect to, the reason of the rule, and indicates clearly the fallacy of the arguments which, not only in this but in all of the adjudicated cases cited, have been urged in opposition, and a careful perusal of that discussion *in extenso* will suffice to show the peculiar force of the doctrine. It is commended as a fair and satisfactory exposition of the rule of law that must govern the question, founded alike upon common sense and common justice.

The recognition of the principle contended for by the appellant would not only be to disregard the letter and spirit of the law as we find it, but to recognize a principle fraught with the greatest evil and mischief. It would be to authorize the unscrupulous, through foreign agents, to prey upon the substance of our citizens, free from immunity and in contempt of the privileges and rights vouchsafed the people by the Constitution.

The conspiracy to appropriate the Gritten land was deliberately concocted in the city of Austin, and the defendant was, according to the evidence, a deliberate party to that conspiracy, and in prospective its chief beneficiary. In furtherance of that design the *fac simile* of the signature necessary to evidence the pretended act of conveyance was surreptitiously obtained in Austin by defendant himself, as were also the certificate of authentication and the field notes of the survey,— and everything, in short, save the ink and perhaps the paper necessary to the commission of a grave offense against the laws of this State, to be consummated here and to inure to the

special benefit of the defendant,— was done by him here; and when the agent in Chicago completed and performed his part of the general design, the offense was complete in this State.

We have thus endeavored to support the jurisdiction of our State court in this case upon general principle and authority, because the question has thus been argued by learned counsel. Suppose for the sake of argument, however, that the authorities cited above fail, when strictly considered, to maintain the position (and we admit that none of them are in all respects entirely analogous), still we are of opinion that, when our statute itself is examined, it will be found amply sufficient to cover completely and fairly the question of jurisdiction, and to establish beyond cavil the liability of defendant to answer for his crime in the courts of our State. These statutes are in exact harmony with the views above expressed. Let us see what was the law when this forgery was executed. "He is guilty of forgery who, without lawful authority and with intent to injure and defraud, shall make a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged, or defeated any pecuniary obligation, or would have transferred or in any manner have affected any property whatever." (Penal Code, art. 431.) Pas. Dig. art. 2093. Such is the general definition of the offense. But the statute does not stop here. In declaring who shall be held guilty under it it expressly provides, "He is guilty of making * . * * under art. 431, *who, knowing the illegal purpose intended, shall write or cause to be written* the signature or the whole or any part of the forged instrument. *All persons engaged in the illegal act are deemed guilty of forgery.*" (Penal Code, art. 435.) Pas. Dig. art. 2097. It does not say that he who shall write or cause it to be written *in*

*this State*, but has he caused the illegal act to be done here, or in Illinois, or anywhere else, no matter where. That is the sole pertinent inquiry. If so he is guilty of forgery here. There can be no escape from the plain, unambiguous language and intention of the statute. Upon that and that alone, without going further, we can safely and confidently rest, under the evidence adduced, the jurisdiction of the District Court of Travis county to hear and determine this case.

It is unnecessary to prolong the discussion. We have given the questions presented in this appeal that careful, deliberate consideration their importance demanded, and we are of opinion the court below did not err in its judgment refusing to discharge the applicant under the writ of *habeas corpus;* and the judgment is therefore affirmed.

*Affirmed.*